# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9257 | **DATE** | January 17, 2003 |
| **CASE TITLE** | Bd Trst Mason PenFd, et. al. v. O'Donnell Plastering | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum and Opinion Order, Plaintiffs Motion for Summary Judgment [20-1] is DENIED, but pursuant to Rule 56(d), the facts as to liability as stated herein are deemed established. By separate order, this matter will be set for trial solely on the issue of damages.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 2 / 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| mds(lc) | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES OF THE MASONS AND PLASTERERS PENSION FUND LOCAL 56 DUPAGE COUNTY, ILLINOIS, et al., </br></br>Plaintiffs, </br></br> v. </br></br> O'DONNELL PLASTERING, INC., </br></br> Defendant. | **DOCKETED** </br> JAN 27 2003 </br></br> No. 01 C 9257 </br></br> HONORABLE DAVID H. COAR |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Board of Trustees of the Masons and Plasterers Pension Fund Local 56, DuPage County, Illinois, Board of Trustees of the Brick Masons Welfare Fund of DuPage County (56), Board of Trustees of the Masons and Plasterers Pension Fund, Local Union No. 74 of DuPage County, Illinois, Board of Trustees of the Bricklayers and Allied Craftworkers Welfare Fund, Local Union No. 74 of DuPage County, Illinois, Board of Trustees of the District Council Training Center Fund, Board of Trustees of the Bricklayers and Trowel Trades International Pension Fund, and Board of Trustees of the International Masonry Institute Promotional Trust ("Plaintiffs" or "Funds"), bring an ERISA action against O'Donnell Plastering, Inc. ("O'Donnell"). Plaintiffs sue for contributions allegedly due under the collective bargaining agreements between O'Donnell and the Bricklayers and Allied Craftsmen Locals 56 and 74 (the "Union" or "Local 56/74"). Before this Court is Plaintiffs' motion for summary judgment. For the following reasons, this Court DENIES the motion.

1



## I. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Kamler v. H/N Telecom. Servs., Inc., 305 F.3d 672, 677 (7th Cir. 2002). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fritcher v. Health Care Servs. Corp., 301 F.3d 811, 815 (7th Cir. 2002).

The movant bears the burden of establishing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995). If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Rule 56(e); Celotex, 477 U.S. at 324. A scintilla of evidence in support of the non-movant's position is insufficient, and the non-movant "must do more than simply show that there is some metaphysical doubt as to the material fact." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Anderson, 477 U.S. at 250. Weighing evidence, determining credibility, and drawing reasonable inferences are jury functions, not those of a judge deciding a motion for summary judgment. Anderson, 477 U.S. at 255.

## II. Background

The following facts are taken from the parties Local Rule 56.1 materials. Plaintiffs are a group of Funds that have been established pursuant to collective bargaining agreements between

2

the Union and the employer association, GDCNI/CAWCC ("GDCNI"), whose member-employers authorizing GDCNI to bargain on their behalf are covered by the collective bargaining agreement with the Union. The Funds are maintained and administered in accordance with and pursuant to the provisions of the National Labor Relations Act, as amended, and other applicable state and federal laws, and also pursuant to the terms of the agreements and Declarations of Trust that establish the funds.

Defendant O'Donnell is an Illinois corporation. Geraldine O'Donnell, an authorized O'Donnell representative, contacted Trygve Espeland, Business Manager of Local 56, in April 1996 to inform him that she employed a Local 56 member. According to Geraldine O'Donnell, Espeland told her that she needed to sign a "Memorandum of Understanding" to have benefits transferred from Plasterer's Local 5 to Local 56/74 pursuant to a reciprocity agreement. On April 8, 1996, Espeland forwarded the Memorandum of Understanding to O'Donnell with a cover letter that stated in part, "Enclosed is the 'Memorandum of Understanding' (the Contract)." The cover letter also contains a handwritten note stating, "Please keep a copy for your files . . . I'll send you a copy of the 'Memorandum' after I've signed it." On April 15, 1996, Geraldine O'Donnell signed the Memorandum of Understanding on behalf of O'Donnell and returned it to Local 56. The document she signed states that it is a Union Agreement between O'Donnell and Bricklayers International Union Locals 56/74. O'Donnell claims it never received a copy of the Memorandum signed by the Union.

According to Plaintiffs, O'Donnell, by signing the Memorandum of Understanding, is bound to the collective bargaining agreement between Locals 56 and 74 and GDCNI. Per paragraph 4 of the Memorandum of Understanding, also known as the "Evergreen Clause," the

April 15, 1996 agreement rolled over, which means that Defendant is bound to all successive agreements since April 15, 1996.[1] The June 1, 1993 collective bargaining agreement was effective from June 1, 1993 through June 30, 1997; the July 1, 1997 collective bargaining agreement was effective from July 1, 1997 through June 30, 2001; and the July 1, 2000 Memorandum of Understanding Adopting the Former Collective Bargaining Agreement is effective from July 1, 2000 through June 30, 2004 (collectively the "successive agreements").

Paragraph 5 of the Memorandum of Understanding states:

> The Employer agrees to pay the amounts of the contributions which it is bound to pay to the several fringe benefit funds described in the Association Agreement and agrees to and is hereby bound by and considered to be a party to the agreements and declarations of trust creating each of said trust funds, together with any restatements or amendments thereto which have been or may be adopted, as if it had been a party to and signed the original copies of the trust instruments. The Employer ratifies and confirms the appointment of each of the employer trustees, who shall, together with their successor trustees designated in the manner provided in the agreements and declarations of trust, and, where applicable, jointly with an equal number of trustees representing employees, carry out the terms and conditions of the trust instruments.

According to provisions in the successive agreements:

> The employer shall contribute the amounts specified per hour for work performed by all employees covered by this Agreement, which amounts shall be used for the purpose of the particular fund in accordance with the agreement and declaration of trust establishing each such fund . . . .

GDCNI bargains contracts with Plasterers Locals 56 and 74 for its member employers that have given their authorization to bargain. O'Donnell joined GDCNI on February 23, 1999. On June 14, 2000, the Executive Director for GDCNI forwarded to Locals 56 and 74 a list of

---

[1] Defendant disputes that it is bound to the collective bargaining agreement, as it was not aware it was signing a Collective Bargaining Agreement. Defendant therefore also disputes that it is bound to the successive collective bargaining agreements.

4

contractors who have assigned their bargaining rights for the purpose of negotiation with the Union. O'Donnell is listed as a contractor.[2] Plasterers Union Local 5 filed a petition for a National Labor Relations Act Section 9(a) election in Case Number 13 RC 20542 before the National Labor Relations Board ("NLRB"), seeking to solely represent the plasterer employees at O'Donnell. Geraldine O'Donnell was a party to the NLRB proceeding and Locals 56/74 intervened as an interested party. At the hearing, Geraldine O'Donnell admitted she signed the Memorandum of Understanding, and her attorney had no objections when the hearing officer stated on the record: "The Employer for the Association and the Intervener are parties to an 8-F agreement expiring on June 30, 2004 . . . ." Defendant contends that any stipulation made at the NLRB hearing was for the sole purpose of conducting an election for O'Donnell's plasterers to choose either Local 56/74 or Plasterers Local 5 Union as their bargaining representative. Local 56/74 lost the election on April 24, 2001, which precipitated this lawsuit. In the six years that Plaintiffs claim they had an agreement with O'Donnell, they never audited it. Local 5 Union audited O'Donnell three times during that six-year period and found that no money was owed.

Local 56/74 never requested a Wage and Fringe Benefit Bond from O'Donnell, nor did it request proof of Workman's Compensation or Liability Insurance. The Union never sent O'Donnell Wage/Fringe Benefit Rates. Further, the Union never sent O'Donnell monthly contribution reports for the period of 1996 through April 2001, and O'Donnell never received correspondence by phone, mail, or fax from April 1996 until the letter dated April 2, 2001, which was after the NLRB election.[3] From January 2001 through June 2001, O'Donnell filed fringe

---

[2] Defendant contends that GDCNI included O'Donnell on that list in error.

[3] Plaintiffs dispute this fact, but the exhibits they cite do not support their dispute.

5

benefit report forms and made payments to Plaintiff Funds as required by the collective bargaining agreements. The report forms, which were unsigned, state: "I hereby certify the above is a true and complete report of all hours worked by the Plasterers and Apprentices during the month. In accordance with the obligations assumed by me to the Fringe Benefit Funds of Local #74, I enclose payment as indicated to the left."

Geraldine O'Donnell gave Plaintiffs a list of all projects performed in DuPage County by O'Donnell where the company did not pay the benefits to Plaintiffs as required under the alleged Union contract. From April 1996 through April 2001, Defendant did not pay benefits for 1814 hours of potentially covered work performed. Pursuant to a fringe benefit audit covering the period of April 15, 1996 through April 30, 2001, O'Donnell failed to make $12,265.48 of the contributions allegedly required to be paid to the Plaintiff Funds according to the collective bargaining agreements and Trust Agreements.

The Plaintiffs seek benefit for hours worked by the following individuals: Wesley Booth, Frank Czuprynski, James Geraghty, Tommy Hardy, Noel McMahon, Brenden O'Donnell, Josef Soja, Andrzej Swedura, Everado O'Campo, Matias O'Camp, and Shawn Burton. These employees are members (or former members) of Local 5 and O'Donnell paid benefits to Local 5 trust funds for the hours claimed due by Plaintiffs in their audit. Plaintiffs contend that the amount they seek for the hours worked by these individuals is alternative recovery, which only includes the differences in rates between the Local 5 and the Local 56/74 Pension and Welfare Funds. Pursuant to reciprocity agreements between Trust Funds of Local 56/74 and Local 5, said Funds agreed to transfer contributions which have been received from an employer for members of adjacent local unions at the lower contribution rate.

O'Donnell claims that it never assigned its bargaining rights to GDCNI for purposes of collective bargaining with the Union.[4] Rather, O'Donnell contends that it only authorized GDCNI to bargain for a contract with Plasterers Local 5 Union. O'Donnell did not make any contributions to the trust funds for Local 56/74 in 1996, 1997, 1998, 1999, or 2000. O'Donnell submitted contributions from approximately April 2001 through August 2001, after it received a letter from Local 74 dated April 2, 2001 requesting funds for DuPage projects. O'Donnell contacted the NLRB and Local 5 to inquire whether or not payment should be made to Local 74. Local 5 advised O'Donnell to made contributions to Local 56/74; the NLRB did not have advice.

### III. Discussion

The crux of this dispute is whether O'Donnell entered into a collective bargaining agreement with the Union when it signed the "Memorandum of Understanding" on April 15, 1996. Though the first line of paragraph 1 clearly states, "The Employer hereby recognizes the Union as the sole and exclusive collective bargaining agent for all Plasterers and Apprentices employed by the Employer . . . .," Defendant contends that it did not know it was signing a collective bargaining agreement; rather, O'Donnell believed it was signing a document that permitted the transfer of contributions from Local 5 Union to Local 56/74. Defendant argues that, since it did not believe it was signing a collective bargaining agreement, and since it did not engage in a course of conduct recognizing the Union, there is at least an issue of material fact

---

[4] Plaintiffs dispute this fact, arguing that, through the recognition clauses in the agreements between the Union and GDCNI, Defendant assigned its bargaining rights. However, the recognition clauses state: "Any plastering contractor who has a collective bargaining agreement with the Union and not in dispute with the Union, and becomes a member of the Association shall be recognized as a member of the Association for collective bargaining purposes." Since O'Donnell disputes it has a collective bargaining agreement with the Union, it is not clear that these recognition clauses establish that O'Donnell assigned its bargaining rights.

7

regarding whether the Defendant is bound to a collective bargaining agreement with the Union. In the alternative, Defendant argues that, even if it has a collective bargaining agreement with the Union, O'Donnell paid contributions to Local 5 and Local 5's trust funds transferred such payments to Plaintiffs for the two members of Local 56/74 that O'Donnell employed. This Court addresses each argument in turn.

The Collective Bargaining Agreement

Because Defendant claims to have been unaware that it was signing a collective bargaining agreement when it signed the Memorandum of Understanding, it asserts "fraud in the execution" as a defense in this action. "Fraud in the execution entails deceiving a party to an agreement as to the very nature of the instrument it signs so that the party actually does not know what it is signing, or does not intend to enter into a contract at all." Laborers Pension Fund et al. v. A & C Environmental, Inc., 301 F.3d 768, 779 (7th Cir. 2002) (citations omitted). If a defendant proves fraud in the execution, the agreement is *void ab initio*, meaning it is as if the contract never existed. Id. To establish the defense of fraud in the execution, O'Donnell must prove that it did not know it was signing a collective bargaining agreement that obligated it to make contributions to the Funds and that its ignorance was excusable because it had reasonably relied on the representations of the union representative. Id. at 780 citing Ill. Conf. of Teamsters & Employers Welfare Fund v. Steve Gilbert Trucking, 71 F.3d 1361, 1365-66 (7th Cir. 1995) and Southwest Adm'rs, Inc. v. Rozay's Transfer, 791 F.2d 769, 774 (9th Cir. 1986).

Defendant looks to Operating Engineers Pension Trust v. Gilliam, 737 F.2d 1501 (9th Cir. 1984) to support its defense of fraud in the execution. In Gilliam, the defendant employer wanted to apply for union membership as an owner-operator so that he could work on a union-

8

controlled job. Id. at 1501-02. The union representative gave the defendant several documents to sign and told him that they were "standard forms signed by owner-operators." Id. at 1504. The documents, however, contained a collective bargaining agreement that obligated his company to make pension fund contributions for its workers. Id. Relying on the union representative's word, the defendant did not read the documents and the Ninth Circuit held that no binding agreement was created because the defendant did not know what he was signing and his ignorance was reasonable. Id. at 1505.

In A&C Environmental, however, the Seventh Circuit held under similar circumstances that the defendant-employer's ignorance was not reasonable. In that case, the union representative misrepresented the nature of the contract to the defendant by stating that the contract only would cover certain employees at a particular location. 301 F.3d at 770. The defendant was given a one-page form, which he filled out himself, writing the name of his company directly below the caption "collective bargaining agreement." Id. at 781. Even though the defendant only reviewed the document for one or two minutes, and he was in the company of the union representative and he was also answering questions of eager employees, the Seventh Circuit held that defendant's ignorance of the nature of the contract was not excusable. Id. Indeed, though the defendant's representative only had a high school education, the court stated that, "as a representative of A & C with the power to enter into contracts for the company, [he] ought to have known not to sign something on behalf of the company without reading it first." Id.; see also Hill v. Gateway 2000, Inc., 105 F.3d 1147, 1148 (7th Cir. 1997) ("A contract need not be read to be effective; people who accept take the risk that the unread terms may in retrospect prove unwelcome.).

9

Like the defendant in A & C Environmental, O'Donnell cannot establish that its ignorance to the nature of the contract was reasonable. Not only did the Memorandum of Understanding state it was an agreement between O'Donnell and Local 56/74, but it also stated that the "Employer hereby recognizes the Union as the sole and exclusive collective bargaining agent." Even if Espeland misrepresented the nature of the contract, Geraldine O'Donnell, as president of the company with the power to enter into contracts on behalf of the company, clearly should have known not to sign the document on behalf of the company without first reading it. This Court thus rejects O'Donnell's fraud in the execution defense, finding that O'Donnell's reliance on the union representative's representation was unreasonable, and its ignorance of the nature of the contract is not excusable.

Defendant also argues that the Union's course of "non-dealing" shows that no Collective Bargaining Agreement existed between the parties. Namely, Defendant asserts that the Union: (1) never requested a Wage and Fringe Benefit Bond; (2) never requested proof of Workman's Compensation or liability insurance; (3) did not send O'Donnell monthly contribution reports to remit for the period of 1996 through April 2001; (4) did not correspond with Defendant by phone, mail, or fax from April 1996 until the letter dated April 2, 2001, which was after the NLRB election; and (5) never audited O'Donnell. While it is well-settled that, in the absence of a signed instrument, an employer may adopt a collective bargaining agreement by its actions or a course of conduct that demonstrates an intent to abide and be bound by the terms of such an agreement, see Robbins v. Lynch, 836 F.2d 330, 332 (7th Cir. 1988), Defendant cites no cases establishing that, despite a signed collective bargaining agreement, a union's course of dealings can negate the existence of such agreement. Indeed, misconduct or breach by the union does not

10

relieve the employer of its obligations to make pension contributions. Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Servs., Inc., 870 F.2d 1148, 1152 (7th Cir. 1989) citing Lewis v. Benedict Coal Corp., 361 U.S. 459, 469-71 (1960). Thus, because this Court finds, as a matter of law, that a valid collective bargaining agreement between the Union and O'Donnell exists, the Union's failure to collect contributions or collect paperwork from the employer does not relieve O'Donnell of its obligation to make contributions. See Teamsters & Employers Welfare Trust of Illinois v. Gorman Bros. Ready Mix, 283 F.3d 877 (7th Cir. 2002) (holding that any reliance by employer on trust's prior failure to seek delinquent contributions, and alleged statement by chairman of trust that as a favor he had made audit revealing prior delinquency "go away," was not reasonable, so that employer could not assert defense of laches or equitable estoppel to bar suit).

Amount of Contributions

Defendant argues in the alternative that, even if O'Donnell has a valid, enforceable collective bargaining agreement with the Union, O'Donnell not only paid contributions to Local 5, but Local 5's trust funds transferred such payments to Plaintiffs for the two members of Local 56/74 that O'Donnell employed. Thus, O'Donnell disputes the auditor's findings to the extent of the amount due Plaintiffs.

Plaintiffs assert that payment to another fund is not a defense, and they cite a plethora of cases where courts decided that employers were obligated to pay two unions. See e.g., Hutter Constr. Co. v. Op. Eng., 862 F.2d 641, 645 n.17 (7th Cir. 1988) ("We recognize that Hutter will now pay two unions for work that was performed by one. This unfortunate result, however, is solely attributable to Hutter's decision to enter into conflicting bargaining agreements.");

11

Robbins v. Lynch, 836 F.2d 330, 334 (7th Cir. 1988) ("Given that funds are entitled to the full contributions called for by the collective bargaining agreements, it follows that [defendant] is not entitled to recoup sums already paid against this obligation."); see also Gerber Truck, 870 F.2d at 1148 n.1 citing, among others, Maxwell v. Lucky Constr. Co., 710 F.2d 1395 (9th Cir. 1983) (holding that employer must make full contributions promised in agreement even though employer had paid, and could not recoup, an identical sum to another pension plan based on an oral agreement with union, and employees would get their benefits from that other plan) and Operating Engineers Pension Trust v. Giorgi, 788 F.2d 620 (9th Cir. 1986) (holding fund entitled to full contribution promised outside of a collective bargaining agreement even though employer was required to, and did, make identical payments to another fund).

In this case, however, Defendant not only asserts that it paid contributions for employees identified by the Union to Local 5 Union, but it also asserts that, pursuant to a reciprocity agreement, Local 5 transferred such payments to Plaintiffs for two of the members who were employed by Local 56/74 (Everard Ocampo and Matias Ocampo). Thus, Defendant argues that Plaintiffs' total is incorrect because Plaintiffs did receive contribution from O'Donnell for these two employees. Plaintiffs muddy the issue further in their reply brief by offering to decrease the amount O'Donnell owes to $2,332.85, arguing that there is a difference between the amount Defendant paid to Local 5 Union and the amount owed to the Union because there is no reciprocity agreement "other than for Pension and Welfare." Plaintiffs also assert for the first time in their reply brief that they also are seeking the full § 29 U.S.C. 1132(g)(2) remedies, even though in Plaintiffs' Local Rule 56 Statement of Material Facts they state they are not seeking dues and they do not include the $2,332.85 audit costs in their calculation. Thus, this Court finds

12

that, on the issue of damages, there remains a genuine issue of material fact and summary judgment is DENIED.

## IV. Conclusion

For the foregoing reasons, Plaintiffs Motion for Summary Judgment is DENIED, but pursuant to Rule 56(d), the facts as to liability as stated herein are deemed established. By separate order, this matter will be set for trial solely on the issue of damages.

**Enter:**

*/s/ David H. Coar*

**David H. Coar**
**United States District Judge**

**Dated: January 17, 2002**